1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| REBECCA SIMMONS ) | Case No.  ED CV 15-01865-SP |
| Plaintiff, ) | |
| ) | |
| v.  ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

19
20

## I.

21

## INTRODUCTION

22
On September 11, 2015, plaintiff Rebecca Simmons filed a complaint

23
against defendant, the Commissioner of the Social Security Administration

24
("Commissioner"), seeking a review of a denial of supplemental security income

25
("SSI") and disability insurance benefits ("DIB").  Plaintiff and defendant have

26
consented to proceed for all purposes before the assigned Magistrate Judge

27
pursuant to 28 U.S.C. § 636(c).  The parties have fully briefed the matters in

28

1    dispute, and the court deems the matter suitable for adjudication without oral
2    argument.

3         Plaintiff presents four disputed issues for decision: (1) whether the
4    Administrative Law Judge ("ALJ") properly considered the relevant medical
5    evidence of record when assessing plaintiff's residual functional capacity ("RFC");
6    (2) whether the ALJ properly assessed plaintiff's credibility; (3) whether the ALJ
7    properly considered lay witness testimony; and (4) whether the ALJ properly
8    considered and developed the vocational evidence and issues at step five.
9    Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 3-14;
10   Defendant's Memorandum in Support of the Answer ("D. Mem.") at 3-12.

11        Having carefully studied the parties' moving and opposing papers, the
12   Administrative Record ("AR"), and the decision of the ALJ, the court concludes
13   that, as detailed herein, the ALJ properly assessed plaintiff's RFC, the ALJ
14   provided clear and convincing reasons to discount plaintiff's credibility, the ALJ
15   gave specific and germane reasons for discounting the statements of a lay witness,
16   and the ALJ did not err at step five. Consequently, the court affirms the decision
17   of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

20        Plaintiff, who was fifty-nine years old on her SSI application date, has two
21   years of college education. AR at 218, 223. She has past relevant work as a fish
22   roe processor, housekeeper, and fish cleaner. *Id.* at 49-50, 215-217, 224.

23        On December 17, 2013 and January 13, 2014, plaintiff filed applications for
24   SSI and DIB benefits, respectively, due to chronic obstructive pulmonary disease,
25   hypertension, hepatitis C, back pain, and anxiety, initially alleging an onset date of

1   disability in both applications of September 1, 2013.[1]  *Id*. at 189, 192, 218, 222.

2   The applications were denied initially and upon reconsideration, after which

3   plaintiff filed a request for a hearing.  *Id.* at 109-110, 118-119, 124-125, 130-132.

4        On April 22, 2015, the ALJ held a hearing.  *Id*. at 32-54.  Plaintiff appeared

5   and testified at the hearing.  *Id*. at 34-48.  The ALJ also heard testimony from Troy

6   L. Scott, a vocational expert ("VE").  *Id*. at 48-53.  In a written decision dated May

7   15, 2015, the ALJ denied plaintiff's claim for benefits.  *Id.* at 12-26.

8        Applying the well-known five-step sequential evaluation process, the ALJ

9   found, at step one, that plaintiff had not engaged in substantial gainful activity

10  since December 17, 2013, the application date.  *Id.* at 17.

11       At step two, the ALJ found plaintiff suffered from the following severe

12  impairment: chronic obstructive pulmonary disease ("COPD").  *Id.*

13       At step three, the ALJ found plaintiff's impairment did not meet or

14  medically equal one of the listed impairments set forth in 20 C.F.R. part 404,

15  Subpart P, Appendix 1 (the "Listings").  *Id.* at 21.

16       The ALJ then assessed plaintiff's RFC,[2] and determined that plaintiff had the

17  RFC to perform medium work, with the limitation that plaintiff must avoid

18  concentrated exposure to pulmonary or respiratory irritants.  *Id.*

19       The ALJ found, at step four, that plaintiff was not capable of performing her

20

21       [1]  The ALJ considered the date the initial application was filed – December 17,

22  2013 – as the alleged date of disability because SSI is not payable prior to the

23  month following the month in which the application was filed.  AR at 22 (citing 20
    C.F.R. § 416.335).

24

25       [2]  Residual functional capacity is what a claimant can do despite existing
    exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-

26  56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,

27  the ALJ must proceed to an intermediate step in which the ALJ assesses the
    claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151

28  n.2 (9th Cir. 2007).

1   past relevant work as a fish roe processor, housekeeper, or fish cleaner, after

2   comparing plaintiff's RFC with the physical and mental demands of the past

3   relevant work based on the testimony of the VE.  *Id.* at 23-24.

4       At step five, the ALJ found there were jobs that existed in significant

5   numbers in the national economy that plaintiff could perform, including hand

6   packager, packing machine operator, and warehouse worker.  *Id.* at 24-25.

7       Consequently, the ALJ concluded that plaintiff has not been under a

8   disability as defined by the Social Security Act ("Act" or "SSA"), since December

9   17, 2013.  *Id.* at 25.

10      Plaintiff filed a timely request for review of the ALJ's decision on July 2,

11  2015, which the Appeals Council denied.  *Id.* at 6-10.  The ALJ's decision stands

12  as the final decision of the Commissioner.

**III.**

**STANDARD OF REVIEW**

15      This court is empowered to review decisions by the Commissioner to deny

16  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

17  Administration must be upheld if they are free of legal error and supported by

18  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

19  (as amended).  But if the court determines that the ALJ's findings are based on

20  legal error or are not supported by substantial evidence in the record, the court may

21  reject the findings and set aside the decision to deny benefits.  *Aukland v.*

22  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242

23  F.3d 1144, 1147 (9th Cir. 2001).

24      "Substantial evidence is more than a mere scintilla, but less than a

25  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

26  "relevant evidence which a reasonable person might accept as adequate to support

27  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

28

1  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

2  finding, the reviewing court must review the administrative record as a whole,

3  "weighing both the evidence that supports and the evidence that detracts from the

4  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

5  affirmed simply by isolating a specific quantum of supporting evidence.'"

6  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

7  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

8  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

9  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th

10  Cir. 1992)).

**IV.**

**DISCUSSION**

13  **A.    The ALJ's RFC Assessment Is Supported by Substantial Evidence**

14         Plaintiff first argues the ALJ improperly determined plaintiff's RFC.  P.

15  Mem. at 3-5; D. Mem. at 3-6.  Specifically, plaintiff contends that: (1) the ALJ

16  failed to properly consider particular opinions rendered by state agency reviewing

17  physicians, Dr. R. Masters and Dr. C. Scott, on behalf of the Social Security

18  Administration; (2) the RFC assessment does not adequately consider plaintiff's

19  lumbar spinal condition; and (3) the RFC assessment does not account for

20  plaintiff's cardiac condition.  P. Mem. at 3-5.

21         In determining whether a claimant has a medically determinable impairment,

22  among the evidence the ALJ considers is medical evidence.  20 C.F.R. §

23  404.1527(b).  In evaluating medical opinions, the regulations distinguish among

24  three types of physicians:  (1) treating physicians; (2) examining physicians; and

25  (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81

26  F.3d 821, 830 (9th Cir. 1995) (as amended).  "Generally, a treating physician's

27  opinion carries more weight than an examining physician's, and an examining

28

5

1  physician's opinion carries more weight than a reviewing physician's." *Holohan v.*

2  *Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).

3  　　　If a treating physician's opinion is uncontradicted, the ALJ must provide

4  clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830.  If

5  the treating physician's opinion is contradicted by other opinions, the ALJ must

6  provide specific and legitimate reasons supported by substantial evidence for

7  rejecting it. *Id.*  Likewise, the ALJ must provide specific and legitimate reasons

8  supported by substantial evidence in rejecting the contradicted opinions of

9  examining physicians. *Id.* at 830-31.  The opinion of a non-examining physician,

10 standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454

11 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th

12 Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

13 　　　**1.　　Dr. R. Masters' Findings**

14 　　　On August 4, 2014, Dr. R. Masters, a state agency non-examining physician,

15 reviewed plaintiff's medical records and assessed her RFC.  AR at 55-66.  The ALJ

16 gave "significant" weight to Dr. Masters' opinion and discussed the findings.  *Id.*

17 at 23.  Among other findings, Dr. Masters ultimately concluded plaintiff would be

18 limited to performing medium exertional work with additional environmental and

19 postural limitations, including avoiding concentrated exposure to extreme cold,

20 exposure to hepatotoxins, and moderate exposure to fumes, odors, dusts, gases, and

21 hazards. *Id.* at 63-64.  Dr. Masters determined plaintiff could perform her past

22 relevant work as a housecleaner.  *Id.* at 65-66.

23 　　　**2.　　Dr. C. Scott's Findings**

24 　　　On September 12, 2014, Dr. C. Scott, also a state agency non-examining

25 physician,  performed another assessment of plaintiff's RFC.  *Id.* at 82-93.  The

26 ALJ also gave "significant" weight to Dr. Scott's opinion and findings.  *Id.* at 23.

27 Dr. Scott noted plaintiff was limited to medium exertional work with certain

28

postural limitations.  *Id.* at 90-91.  With regard to environmental limitations, Dr. Scott found plaintiff should avoid moderate exposure to fumes, odors, dusts, and gases; specifically, this conclusion was based on plaintiff's need to avoid hepatotoxins and inhalants.  *Id.* at 91-92.  Dr. Scott opined no limitations based on temperature.  *Id.* at 91.  Dr. Scott also ultimately concluded that plaintiff had the RFC to perform past relevant work.  *Id.* at 93.

### 3.  The ALJ's Findings

The ALJ noted both doctors' findings that plaintiff was limited to medium exertional work with additional environmental and postural limitations; however, despite giving significant weight to the state agency physicians' assessments, the ALJ determined the objective medical evidence in the record did not support a finding of postural limitations.  *Id.* at 23.  Plaintiff argues the ALJ failed to properly consider relevant medical evidence rendered by the state agency physicians.  P. Mem. at 3.  Specifically, plaintiff argues the ALJ failed to adequately discuss plaintiff's environmental limitations resulting from even moderate exposure to pulmonary irritants, hazards, and hepatotoxins, and to the extreme cold.  *Id.* at 3-4.  Plaintiff also argues the ALJ failed to adequately consider her lumbar spinal and cardiac conditions.  *Id.* at 5.

"It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'"  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988) (internal citations omitted)).  The ALJ was not required to discuss evidence in the record that is not probative as to the RFC.  *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) ("The [Commissioner] . . . need not discuss all evidence presented . . . Rather, [the Commissioner] must explain why significant probative evidence has been rejected." (citation and internal quotation marks omitted)).

1    Here, the ALJ provided a detailed summary of the objective medical

2    evidence pertaining to plaintiff's assessments alongside a discussion of plaintiff's

3    subjective testimony and treatment records for her COPD.  AR at 21-23.  The ALJ

4    noted several inconsistencies both in plaintiff's statements and her conduct that

5    cast doubt on plaintiff's claimed limitations.  In particular, the ALJ found the

6    medical evidence did not support a finding that plaintiff's COPD rendered her

7    disabled.

8        The ALJ accorded the postural limitations opined by the state agency

9    physicians little weight because they were not supported by "the findings of the

10   record as a whole."  *Id.* at 23.  The ALJ noted that plaintiff engaged in physical

11   daily activities, such as cooking, cleaning, doing laundry, and managing personal

12   care tasks, despite her alleged impairments.  *Id.* at 22; *see id.* at 245.  Thus, to the

13   extent the ALJ rejected any physician's conclusions, the ALJ provided sufficient

14   grounds for rejecting the postural limitations plaintiff raises here.  *See Magallanes*,

15   881 F.2d at 755 (ALJ need not state "I reject the treating physician's opinions

16   because . . ." so long as the record reveals specific, legitimate inferences that may

17   be drawn from ALJ's opinion justifying decision not to adopt physician's opinion).

18

19       Plaintiff chiefly argues the ALJ erred by not explaining why he failed to

20   include the state agency physicians' conclusions restricting plaintiff from even

21   moderate exposure to pulmonary irritants and extreme cold temperatures in his

22   RFC determination.  P. Mem. at 4.  While stating he gave "significant weight" to

23   Dr. Masters' and Dr. Scott's assessments, the ALJ only restricted plaintiff from

24   *concentrated* exposure to pulmonary or respiratory irritants.  AR at 21, 23.  But in

25   faulting the ALJ for not fully adopting every limitation found by Dr. Masters and

26   Dr. Scott, plaintiff ignores that the state agency physicians' findings only carry

27   weight to the extent they are supported by other evidence in the record.  *See* 20

28

C.F.R. § 416.927(c)(3); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Here, the objective medical evidence supported precluding plaintiff from only concentrated exposure to pulmonary irritants. *See Vincent*, 739 F.2d at 1394-95 (ALJ "need not discuss *all* evidence presented" but rather "must explain 'why significant probative evidence has been rejected.'"). To the extent the ALJ rejected the agency physicians' respiratory conclusions, the ALJ provided sufficient grounds for rejecting the limitations plaintiff raises here. *See Magallanes*, 881 F.2d at 755. Specifically, as the ALJ noted, x-rays indicate that plaintiff's lungs were well-expanded, and physical examinations showed normal respiratory functions, oxygen saturation was normal, and spirometry testing revealed only mild obstruction that improved with treatment. AR at 23, 324-325, 332, 334, 370-71, 386, 389, 394, 396, 503-504. As a result, the ALJ did not err in rejecting the non-examining physicians' suggested restriction that plaintiff avoid even moderate exposure to pulmonary irritants where such restriction is not supported by other evidence in the record. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *see also Bray v. Astrue*, 554 F.3d 1219, 1228 (9th Cir. 2009).

As for temperature restrictions, the state agency physicians reached different conclusions for plaintiff's limitations against extreme cold. Specifically, Dr. Masters found these limitations, while Dr. Scott did not, making them inconsistent. *See Morgan*, 169 F.3d at 603 (rejecting reported medical evidence due to internal inconsistencies in report). Because of these different conclusions, the state agency physicians' opinions in this regard are undermined and may be rejected. *See Bray*, 554 F.3d at 1228. Under *Morgan*, the demonstrated inconsistency between the two physicians' conclusions here provides a basis for the ALJ to reject plaintiff's

1    suggested limitation against extreme cold.

2        Next, plaintiff argues the ALJ failed to account for alleged back pain and

3    cardiac conditions in the RFC determination.  P. Mem. at 5.  Despite plaintiff's

4    claim, the ALJ properly considered plaintiff's alleged cardiac conditions.

5    Specifically, the ALJ acknowledged the medical records indicating plaintiff's

6    complaints of chest pain, but noted the diagnostic testing revealed merely mild

7    findings, no evidence of ischemia, and a subsequent myocardial perfusion scan that

8    showed normal findings with an ejection fraction of seventy-three percent.  AR at

9    18; *see id.* at 318, 333, 519, 553.

10        Similarly for plaintiff's alleged back pain or lumbar spinal condition, the

11   medical record fails to support plaintiff's subjective complaints.  Although plaintiff

12   complained of back pain in her applications, she did not testify back pain was a

13   disabling condition at the hearing before the ALJ.  *Id.* at 34-48.  Additionally, the

14   state agency assessments indicate plaintiff had not alleged back pain at prior

15   examinations in January 2014 and April 2014.  *Id.* at 60, 62, 72, 74-75.  Dr.

16   Masters' review stated there was no mention of evaluation or treatment for spinal

17   pathology as of August 2014.  *Id.* at 73.  Plaintiff argues, however, the ALJ should

18   have further developed the record with respect to plaintiff's back pain, pointing to

19   a CT scan conducted on September 23, 2014 showing degenerative disc disease in

20   the lumbar spine.  P. Mem. at 5; *see* AR at 517.  The ALJ has a duty to develop the

21   record further only "when there is ambiguous evidence or when the record is

22   inadequate to allow for proper evaluation of the evidence."  *Mayes*, 276 F.3d at

23   459-60; *see Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  Given that the

24   September 2014 CT scan was conducted in response to a complaint of abdominal

25   pain and the record is devoid of complaints of back pain, this single CT scan did

26   not create ambiguity in the record so as to trigger the ALJ's duty to obtain

27   additional medical evidence.  *See Muro v. Astrue*, 2013 WL 327468, at *2 (C.D.

28

1   Cal. Jan. 29, 2013) (one possible reference to degenerative joint disease failed to

2   trigger ALJ's duty to develop the record); *Grissom v. Astrue*, 2009 WL 1309506,

3   at \*5 (C.D. Cal. May 8, 2009) (single reference to possible history of mental health

4   treatment did not trigger duty to further develop the record where claimant offered

5   no other evidence of such treatment).

6          In short, plaintiff has not shown the ALJ's ultimate RFC determination is

7   unsupported by substantial evidence or that the ALJ failed to properly evaluate the

8   medical evidence.  The ALJ thus properly determined plaintiff's RFC level to be

9   medium, with only a limitation against concentrated exposure to pulmonary or

10  respiratory irritants.

11  **B.     The ALJ Properly Considered Plaintiff's Credibility**

12         Second, plaintiff argues the ALJ erred in evaluating plaintiff's credibility.  P.

13  Mem. at 6-10.  Specifically, plaintiff contends the ALJ failed to identify which of

14  plaintiff's statements he found not credible, failed to properly consider her

15  subjective complaints, and failed to properly assess her credibility.  *Id.*

16         The ALJ must make specific credibility findings supported by the record.

17  Social Security Rule 96-7p, 1996 WL 374186, at \*2.  To determine whether

18  testimony concerning symptoms is credible, the ALJ engages in a two-step

19  analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the

20  ALJ must determine whether a claimant produced objective medical evidence of an

21  underlying impairment "'which could reasonably be expected to produce the pain

22  or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

23  341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

24  malingering, an "ALJ can reject the claimant's testimony about the severity of her

25  symptoms only by offering specific, clear and convincing reasons for doing so."

26  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331

27  F.3d 1030, 1040 (9th Cir. 2003).

28

"[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).   To permit a meaningful review of the ALJ's credibility determination, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.*   The ALJ may consider several factors in weighing a claimant's credibility, including:   (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities.   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.   AR at 22.   At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.   The ALJ discounted plaintiff's credibility because:   (1) objective medical evidence was inconsistent with plaintiff's subjective complaints; (2) plaintiff's activities of daily living were inconsistent with her alleged symptoms; and (3) plaintiff's work history was sporadic.   *Id.* at 22-23.

As an initial matter, contrary to plaintiff's argument, the ALJ did specify those portions of plaintiff's testimony he found to be not entirely credible:

> At the hearing, the claimant testified she was disabled because of her
> alleged chronic obstructive pulmonary disease.   The claimant alleged
> symptoms including shortness of breath and fatigue.   She stated she
> has had difficulty breathing for the past couple of years.   She stated
> treatment for her alleged impairments included use of an inhaler.   The

claimant further claimed she was limited as follows: she was able to walk not more than half of one block; stand for no more than thirty minutes; and sit for one hour.  She stated she had to lie down six to seven hours each day. . . . .

. . . . The claimant's statements in [the] function report are of the same general nature as the subjective complaints from the claimant's testimony.  The claimant stated she was unable to work due to her chronic obstructive pulmonary disease.

*Id.* at 21-22.

### 1.   Objective Medical Evidence

The ALJ found the severity of plaintiff's alleged symptoms and limitations to be greater than expected based on the objective medical evidence in the record. *Id.* at 22-23. The lack of supporting medical evidence alone cannot suffice as the basis for discounting plaintiff's pain testimony.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  But the lack of such evidence can be considered as a factor in an ALJ's credibility analysis.  *See id.*; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating credibility).

The ALJ here extensively discussed how plaintiff's COPD did not amount to a disability in light of chest x-rays that showed plaintiff's lungs were well-expanded and clear, a pulse oximetry that showed plaintiff's C2 saturation to be normal, and findings of generally normal physical examinations of plaintiff's respiratory system.  AR at 23; *see id.* at 323-324, 332, 334, 370-371, 386, 389, 394.  The ALJ also considered a spirometry test that showed plaintiff's impairment was improving, despite a mild obstruction, after a bronchodilator.  *Id.* at 23; *see id.* at 396-404.  This evidence constitutes a clear and convincing reason for discounting plaintiff's credibility given her complaints of severe limitations.

1   Plaintiff does not really dispute the adequacy of this reason, but instead

2   argues it is not sufficient on its own.  But as discussed below, the ALJ gave

3   additional reasons for discounting plaintiff's credibility.

4   **2.   <u>Daily Activities</u>**

5   The ALJ also found plaintiff less credible because the account of her daily

6   activities was inconsistent with her alleged limitations.  AR at 22; *see Tommasetti*,

7   533 F.3d at 1039 (inconsistency between a claimant's alleged symptoms and his

8   daily activities may be a clear and convincing reason to find a claimant less

9   credible); *Bunnell*, 947 F.2d at 346-47 (same).  In a February 20, 2014 Function

10   Report, plaintiff stated she could do household chores including doing laundry,

11   ironing, cleaning up, and cooking while also managing her personal care tasks.  AR

12   at 22, 243-251.  Based on these findings, the ALJ determined plaintiff was capable

13   of performing daily activities at a normal level, which is inconsistent with her

14   alleged impairments.  *Id.* at 22 ("It appears that despite her alleged impairments,

15   she engaged in a normal level of daily activity . . . .").

16   Plaintiff disputes the ALJ's finding that she was able to engage in normal

17   daily activities.  Plaintiff points to a progression in her symptoms – and resulting

18   changes in her daily activities – after the submission of the Function Report in

19   February 2014.  P. Mem. at 6-7.  Specifically, plaintiff notes that she experienced

20   increased depression, difficulty breathing, and difficulty walking longer distances

21   in an August 2014 written appeal.  *See* AR at 274.  Plaintiff also referred to

22   increasing reliance on a friend to assist with her chores and cooking.  *Id.* at 278.

23   By November 2014, plaintiff noted she no longer cooked or worked around the

24   house due to exacerbated shortness of breath.  *Id.* at 289.  At the hearing, plaintiff

25   testified she could not walk farther than three blocks even on a "good day."  *Id.* at

26   43.  Further, plaintiff stated she generally spent "six or seven hours" lying down

27   during an average workday.  *Id.* at 44.

28

The ALJ's reference to plaintiff's daily activities as a basis for his credibility determination does not appear to account for these reported changes in plaintiff's condition occurring after the Function Report was submitted.  Notably, the Function Report initially indicated plaintiff merely needed occasional encouragement to complete her chores (*id.* at 245; *see also id.* at 254), whereas plaintiff later revealed her friend had to help her do chores because plaintiff "got winded very easy."  *Id.* at 278.  Moreover, plaintiff's testimony that she spends six or seven hours on an average workday lying down is unlikely to be considered part of an individual's normal level of daily activity.  In light of plaintiff's diminished ability to independently perform her chores, cook, or have sustained activity levels, it appears the ALJ mischaracterized plaintiff's record of daily activities as "normal."  *See Saunders v. Astrue*, 433 F. Appx. 531, 533-34 (9th Cir. 2011) (ALJ erred in discrediting claimant's testimony on basis of daily activities where cooking was limited to sandwich-making and frozen food, children assisted plaintiff with household chores, and claimant required rest after any activity); *see also Reddick v. Chater*, 157 F.3d 715, 723 n.1 (9th Cir. 1998) (noting that limited cooking, cleaning, and shopping are not indicative of an ability to engage in sustained work activity).

As a result, the ALJ erred in finding plaintiff less credible based on her daily activities.

### 3.   <u>Work History</u>

The final reason the ALJ gave for his negative credibility determination was based on plaintiff's sporadic work history prior to her alleged disability onset date.  *Id.* at 22.  An ALJ is required to consider a claimant's work history when assessing credibility.  *See* 20 C.F.R. § 404.1529(c)(3).  Evidence of a poor work history is a clear and convincing reason to discredit plaintiff's credibility.  *Thomas*, 278 F.3d at 959 (upholding ALJ's negative credibility determination because, among other

1  factors, plaintiff's "work history was spotty, at best" and she "has shown little

2  propensity to work in her lifetime").

3      Here, the ALJ cites to evidence in the record demonstrating that plaintiff had

4  lengthy gaps in her work history.  AR at 22.  Specifically, the record shows

5  plaintiff had no earnings between 1976-1984 and 1987-2006.  *Id.* at 214-217.

6  These periods of sporadic work history occurred many years before the alleged

7  disability onset date that plaintiff claims in 2013, indicating plaintiff's work history

8  was spotty, as in *Thomas*.  Plaintiff argues it was unfair for the ALJ to discount

9  plaintiff's credibility on this basis, since he failed to raise the issue with her.  P.

10  Mem. at 8.  This is incorrect.  The ALJ raised plaintiff's gaps in her earning history

11  at the hearing, and plaintiff explained she spent those years collecting scrap metal.

12  AR at 39.  Thus, the ALJ properly evaluated plaintiff's credibility in light of her

13  sporadic work history, which predated the alleged disability onset date.

14      In sum, not all of the reasons the ALJ provided for discounting plaintiff's

15  credibility were clear and convincing.  The ALJ erred in mischaracterizing

16  plaintiff's daily activities as "normal" without taking into account subsequent

17  changes in her activities.  But such error is harmless, as the ALJ identified other

18  sufficient clear and convincing reasons to discredit plaintiff.  *See Batson v.*

19  *Comm'r*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (ALJ erred in relying on one of

20  several reasons in support of an adverse credibility determination, but such error

21  was harmless because the ALJ's remaining reasons and ultimate credibility

22  determination were adequately supported by substantial evidence in the record).

23  The ALJ noted the disparity between the objective medical evidence and the

24  alleged severity of plaintiff's symptoms and limitations as an important factor,

25  which in combination with plaintiff's meager work history provides sufficient clear

26  and convincing support for the adverse credibility determination.  Thus, the ALJ's

27  error would not "negate the validity" of his ultimate credibility finding, and the

28

1  ALJ's decision remains "legally valid, despite such error." *See Carmickle v.*

2  *Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks and

3  citation omitted).

4  **C.   The ALJ Properly Considered the Testimony of a Lay Witness**

5          Plaintiff also argues the ALJ committed legal error by failing to adequately

6  consider the statements of Cindy Wheatcraft, plaintiff's friend and lay witness,

7  regarding plaintiff's symptoms and ability to work.  P. Mem. at 10-11.  The ALJ

8  noted that what Wheatcraft stated in a February 21, 2014 Third Party Function

9  Report was generally consistent with plaintiff's subjective complaints, including

10 plaintiff's COPD, lack of energy, and difficulty breathing.  AR at 22; *see id.* at

11 252-260.

12         The ALJ rejected Wheatcraft's testimony on the following grounds: (1)

13 Wheatcraft's statements were consistent with plaintiff's subjective complaints,

14 which the ALJ found unreliable for the reasons discussed above; (2) a lay person's

15 opinion on a diagnosis or severity of plaintiff's symptoms is "far less persuasive on

16 those same issues than medical opinions"; (3) by virtue of her relationship with

17 plaintiff, she "had an emotional motivation to support" plaintiff; and (4) her

18 statements "are not supported by the clinical or diagnostic medical evidence" in the

19 record. *Id.* at 22.

20         "[L]ay testimony as to a claimant's symptoms or how an impairment affects

21 ability to work *is* competent evidence and therefore *cannot* be disregarded without

22 comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal

23 quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see*

24 *also* 20 C.F.R.§§ 404.1513(d)(4), 416. 913(d)(4) (explaining that the

25 Commissioner will consider all evidence from "non-medical sources[,]" including

26 "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors,

27 and clergy").  The ALJ may only discount the testimony of lay witnesses if he

28

1  provides specific "reasons that are germane to each witness." *Dodrill v. Shalala*,

2  12 F.3d 915, 919 (9th Cir. 1993); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

3  2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an

4  ALJ must take into account, unless he or she expressly determines to disregard

5  such testimony and give reasons germane to each witness for doing so.").

6       The first reason the ALJ listed for discounting Wheatcraft's statements was

7  proper.  The ALJ rejected Wheatcraft's statements because they were similar to

8  plaintiff's own subjective complaints, and thus suffered from similar credibility

9  problems, which is a specific and germane reason to discount Wheatcraft's

10  testimony.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.

11  2009) (finding ALJ's rejection of lay witness testimony, based in part on the same

12  reasons for discounting the plaintiff's own allegations, constituted "germane

13  reasons" for rejecting lay witness's testimony).  In addition, "[w]here lay witness

14  testimony does not describe any limitations not already described by the claimant,

15  and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

16  equally well to the lay witness testimony," any error by the ALJ in discounting the

17  lay witness testimony is harmless.  *Molina v. Astrue*, 674 F.3d 1115, 1117 (9th Cir.

18  2012).

19       The ALJ's second stated reason – Wheatcraft is not a medical professional –

20  was not a proper reason to discount it.  Although an ALJ may reject lay testimony

21  if it conflicts with medical evidence, he may not discount this testimony solely on

22  the basis that it is lay testimony.  *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th

23  Cir. 1987) (explaining that an ALJ is required to consider the testimony of a lay

24  witness); *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  A lay

25  witness is "not disqualified from rendering an opinion" on how the plaintiff's

26  condition affects his or her ability to work simply because the witness is not a

27  medical expert.  *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).  Thus, the

28

ALJ erred in stating Wheatcraft's lay status alone was a basis for discounting her testimony.

In addition, the ALJ's rejection of Wheatcraft's testimony on the ground that, as plaintiff's friend, she had an "emotional motivation" to support her "amount[s] to a wholesale dismissal of the testimony of all [lay] witnesses as a group and therefore does not qualify as a reason germane to" Wheatcraft. *Smolen*, 80 F.3d at 1289; *see Dodrill*, 12 F.3d at 919 ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify"); *Valentine*, 574 F.3d at 694 ("[R]egardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her conditions." (internal quotations and citation omitted)); *Sprague,* 812 F.2d at 1232 ("Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."). The ALJ's rejection of Wheatcraft's testimony simply because of her status as plaintiff's friend was improper.

Finally, the ALJ found Wheatcraft's statements, like plaintiff's, "are not supported by the clinical or diagnostic medical evidence." AR at 22. This was, like the first reason, a specific reason germane to Wheatcraft for rejecting her testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis*, 236 F.3d at 511) (inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness).

Although two of the reasons given by the ALJ for rejecting the lay testimony were not valid, the others were, rendering his error harmless. *See Molina*, 674 F.3d at 1117. Accordingly, the ALJ properly rejected Wheatcraft's lay witness testimony.

1     **D.**    <u>**The ALJ Did Not Err at Step Five**</u>

2        Finally, plaintiff argues the ALJ erred at step five of the sequential

3 evaluation process. P. Mem. at 11-14. Specifically, plaintiff contends there was

4 not substantial evidence to support the ALJ's step five finding because plaintiff's

5 impairments preclude her from performing the occupations identified by the VE,

6 and in any event the VE provided defective testimony regarding the number of

7 occupations. *Id.*

8        At step five, the burden shifts to the Commissioner to show that the claimant

9 retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468

10 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not

11 disabled at step five, the Commissioner must provide evidence demonstrating other

12 work exists in significant numbers in the national economy that the claimant can

13 perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §

14 404.1512(f). The Commissioner may satisfy this burden through the testimony of

15 a VE. *Lounsburry*, 468 F.3d at 1114.

16        In response to a hypothetical that includes the limitations the ALJ found

17 credible, a VE may testify as to "(1) what jobs the claimant, given his or her

18 [RFC], would be able to do; and (2) the availability of such jobs in the national

19 economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "A VE's

20 recognized expertise provides the necessary foundation for his or her testimony."

21 *Bayliss*, 427 F.3d at 1218. Accordingly, VE testimony is substantial evidence. *See*

22 *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[T]he ALJ was within his

23 rights to rely solely on the vocational expert's testimony.") (quoting *Conn v. Sec'y*,

24 51 F.3d 607, 610 (6th Cir. 1995)). But where the VE testimony is fundamentally

25 flawed, remand is appropriate. *See, e.g., Farias v. Colvin*, 519 Fed. Appx. 439,

26 440 (9th Cir. 2013) (remand required where VE provided employment data for a

27 different occupation than the one he opined claimant could perform).

28

1      ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in

2  evaluating whether the claimant is able to perform other work in the national

3  economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations

4  omitted); *see also* 20 C.F.R. § 404.1566(d)(1) (DOT is a source of reliable job

5  information).  The DOT is the rebuttable presumptive authority on job

6  classifications.  *Johnson*, 60 F.3d at 1435.

7      At the April 22, 2015 hearing, the ALJ asked the VE to consider a

8  hypothetical scenario where an individual closely approaching retirement age with

9  a high school education and the same past work as plaintiff could do work at the

10  medium exertional level, while needing to avoid concentrated exposure to

11  pulmonary or respiratory irritants.  AR at 51.  The VE testified that such a person

12  would be able to perform the jobs of hand packager (DOT 920.587-018), packing

13  machine operator (DOT 920.685-078), and warehouse worker (DOT 922.687-058).

14  *Id.* at 52.  The VE testified there were approximately 169,000 positions nationally

15  for hand packagers, 170,000 positions nationally for packing machine operators,

16  and 500,000 positions nationally for warehouse workers.  *Id.* at 52.  Additionally,

17  the ALJ asked a second hypothetical scenario involving a similar person who

18  would also need to take unscheduled breaks in addition to normally scheduled

19  breaks lasting up to an hour, while also missing three to four days of work each

20  week.  *Id.*  The VE testified that such an individual would not be able to perform

21  any job as stated in the DOT.  *Id.*

22      Plaintiff's representative had an opportunity to cross examine the VE.  *Id.* at

23  53.  The representative first inquired if a hypothetical individual who would miss

24  approximately three days each month would be available to receive a full-time

25  position in the national economy, to which the VE answered, "No."  *Id.*  Then

26  plaintiff's representative asked if a hypothetical person who would be "off task

27  approximately 15 to 20 percent of the day" would have full-time positions

28

available in the national economy, to which the VE again answered in the negative. *Id.*

Plaintiff first contends the ALJ erred in its step five determination because there was not substantial evidence that plaintiff could perform the occupations identified by the VE, in light of plaintiff's alleged physical and mental impairments.  P. Mem. at 11-12.  As discussed above, the ALJ properly determined plaintiff had the RFC to perform medium work, while avoiding concentrated exposure to pulmonary and respiratory irritants.  AR at 21.  With her step five argument, plaintiff additionally contends the ALJ should have considered the VE's testimony that no work would be available for an individual requiring unscheduled work breaks of up to one hour, who is absent three to four days per month, or who is off task 15-20% of the time.  But plaintiff offers no reason why the ALJ should have incorporated these limitations into plaintiff's RFC so as to make the VE's testimony in this regard relevant.  And indeed, the ALJ detailed his reasons for finding no mental limitations, including the findings of plaintiff's examining psychologist, Dr. William C. Prince, who noted plaintiff was not impaired in performing consistent work activities, maintaining regular attendance in the workplace, or completing a normal workday or workweek due to a psychiatric condition.  AR at 18-20; *see id.* at 377.  The ALJ may reject restrictions not supported by substantial evidence in the record.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).  Thus, the ALJ properly excluded from consideration plaintiff's alleged restrictions stemming from physical or mental impairments that were unsupported by the objective medical evidence.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (rejecting claimant's contention that ALJ erred at step five by failing to account for her limitations in the ALJ's hypothetical where claimant "simply restates" a prior RFC argument).

Plaintiff additionally contends the VE provided defective testimony.  P.

Mem. at 13.  Specifically, plaintiff argues the VE erred in testifying there were 500,000 "occupations" for warehouse workers (DOT 922.687-058).  *Id.*  But as defendant points out (D. Mem. at 10), plaintiff's argument is inconsistent with the hearing transcript, which shows the VE testified there were 500,000 "positions" in the national economy rather than "occupations."  AR at 52.  But assuming plaintiff means to challenge the VE's testimony that there were 500,000 such positions, plaintiff has failed to show the VE erred.  Plaintiff's interpretation of the Job Browser Pro report plaintiff attaches as Exhibit C is insufficient reason to question the validity or accuracy of the VE's testimony.  *See Cardone v. Colvin*, 2014 WL 1516573, at *5 (C.D. Cal. Apr. 18, 2014) ("plaintiff's lay assessment of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the VE's opinion"); *Vera v. Colvin*, 2013 WL 6144771, at *22 (C.D. Cal. Nov. 21, 2013) ("lay assessment of the data derived from . . . Job Browser Pro does not undermine the reliability of the VE's testimony" where the plaintiff "failed to introduce any VE opinion interpreting the data from those sources and the significance of the information reflected on the various reports is not entirely clear"); *Valenzuela v. Colvin*, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013) (rejecting plaintiff's assessment, in part, because it "was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context").

Moreover, even if the VE erred in testifying to 500,000 warehouse worker positions, the VE also testified to 169,000 hand packager and 170,000 packing machine operator positions.  AR at 52.  Ninth Circuit case law has held that these amounts meet the statutory standard in light of 20 C.F.R. § 416.966(b).  *See Gutierrez v. Comm'r*, 740 F.3d 519, 528-29 (9th Cir. 2014) (affirming ALJ's decision that 25,000 jobs constitutes a "significant number" of national jobs); *see also Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (per curiam) (64,000

nationwide jobs are significant).  Therefore, any error by the ALJ in considering the alleged VE misstatement would at most constitute harmless error at step five. *See Rushing v. Astrue*, 360 Fed. Appx. 781, 783 (9th Cir. 2009) (holding ALJ's step five errors were harmless) (citing *Burch*, 400 F.3d at 679).

Because the ALJ properly determined plaintiff's RFC, substantial evidence supports the ALJ's step five determination that plaintiff could perform jobs that exist in significant numbers in the national economy.

### V.

### CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: October 31, 2016

_____
SHERI PYM
United States Magistrate Judge

24